OPINION OF THE COURT
Sheryl L. Parker, J.
The applicant, Amy Swenson, the attorney for Mario Mendoza and on behalf of Mario Mendoza, was granted a writ of habeas corpus by this court on October 14, 2014, returnable on October 15, 2014. Department of Correction, despite being duly served, fails to respond or appear.
Facts
The applicant affirms that Mario Mendoza was arrested on June 2, 2014, for the violation of an order of protection which had previously been issued. Upon his arrest he was found to be in possession of a quantity of cocaine. Mr. Mendoza was charged with criminal contempt in the second degree (Penal Law § 215.50) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), both of which offenses constitute A misdemeanors.
On June 3, 2014, at his arraignment for these offenses, Mr. Mendoza was released on his own recognizance.
On September 23, 2014, Mr. Mendoza failed to appear for a scheduled court appearance and a bench warrant was issued.
On September 30, 2014, Mr. Mendoza appeared, the warrant was vacated and bail was set in the amount of $1,000 cash or bond.
On October 14, 2014, he pleaded guilty to harassment in the second degree (Penal Law § 240.26), a violation, and was sentenced to a conditional discharge.
The Department of Correction has refused to release Mr. Mendoza based on a civil immigration detainer.
The relator contends that his continued incarceration is in violation of the Fourth and Fourteenth . Amendments of the United States Constitution and article I, § 12 of the New York State Constitution.
The detainer that was served on the Department of Correction on or about October 2, 2014, is entitled “Immigration Detainer-Notice of Action,” otherwise known as Form 1-247, and is signed by Immigration Officer Walz, a non-judicial officer. The detainer is issued pursuant to 8 CFR 287.7.
The detainer in this case indicates that the Department of Homeland Security (hereinafter DHS) has determined that *275 there is reason to believe that Mr. Mendoza is an alien subject to removal because he “has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults ... or a controlled substance.”
As is usual with 1-247 detainers, the document requests that the Department of Correction maintain custody of Mr. Mendoza for a period not to exceed 48 hours, excluding Saturdays, Sundays and holidays, beyond the time that he would otherwise have been released from the custody of the Department of Correction.
Analysis
8 CFR 287.7 is a regulation promulgated by the DHS to implement the provisions of 8 USC § 1357 (d) (3).
8 USC § 1357 (d) provides:
“Detainer of aliens for violation of controlled substances laws
“In the case of an alien who is arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances, if the official (or another official)—
“(1) has reason to believe that the alien may not have been lawfully admitted to the United States or otherwise is not lawfully present in the United States,
“(2) expeditiously informs an appropriate officer or employee of the Service authorized and designated by the Attorney General of the arrest and of facts concerning the status of the alien, and
“(3) requests the Service to determine promptly whether or not to issue a detainer to detain the alien,
“the officer or employee of the Service shall promptly determine whether or not to issue such a detainer. If such a detainer is issued and the alien is not otherwise detained by Federal, State, or local officials, the Attorney General shall effectively and expeditiously take custody of the alien.”
8 CFR 287.7, as pertinent to this case, provides as follows:
“(a) Detainers in general ... A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in *276 the custody of that agency . . . The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible ...
“(d) Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.” (Emphasis supplied.)
There is no language in the federal statute or regulation that requires a local law enforcement agency to detain anyone based on a federal detainer. The language of the regulation and, in fact, the detainer itself speaks in terms of a “request” to detain. Regulation 287.7 (d) does use the word “shall” detain for up to 48 hours but that directive, when read together with the rest of the regulation, cannot be interpreted as a demand to retain for 48 hours but rather sets a cap, i.e., if a person is detained it cannot exceed 48 hours excluding weekends and holidays. And of course, there is no language directing detention of anyone in 8 USC § 1357 (d). (See Miranda-Olivares v Clackamas County, 2014 WL 1414305, 2014 US Dist LEXIS 50340 [D Or, Apr. 11, 2014, No. 3:12-cv-02317-ST].)
Preliminarily, the Department of Correction is a law enforcement agency of the City of New York and individual correction officers are peace officers (see CPL 2.10 [25]). As such their powers to detain are subject to city and state law.
New York City Charter § 623 empowers the Commissioner of Correction to take charge and manage institutions of the city (subd [1]) and court pens (subd [2]) and gives the Commissioner “[a]ll authority, except as otherwise provided by law, concerning the care and custody of felons, misdemeanants and violators of local laws held in the institutions under his charge” (subd [4]). “The commissioner . . . may designate any institution or part thereof under the jurisdiction of the commissioner for the safekeeping of persons committed to the department of correction” (see Administrative Code of City of NY § 9-101). The role, therefore, of the Department of Correction, as an agency, is to provide facilities to house only those persons who are committed to the Department by a court of competent jurisdiction. Any *277 detention of any person beyond this statutory authority is beyond the jurisdiction and powers of the Commissioner.
On March 21, 2012, Administrative Code § 9-131 became effective. It added to the above powers of the Commissioner by providing for instances in which the Commissioner, pursuant to that statute, may honor civil immigration detainers. Section 9-131 (b) (1) (i) provides: “The department shall not honor a civil immigration detainer by . . . holding an individual beyond the time when such individual would otherwise be released from the department’s custody, except for such reasonable time as is necessary to conduct the search specified in paragraph two.”
Section 9-131 (b) (2) provides:
“Paragraph one of this subdivision shall not apply when:
“i. a search, conducted at or about the time when such individual would otherwise be released ... of state and federal databases . . . indicates, or the department has been informed by a court, that such individual:
“A. has been convicted of a covered crime;
“B. is a defendant in a pending covered criminal case;
“C. has an outstanding criminal warrant in the state of New York or another jurisdiction in the United States;
“D. is identified as a known gang member in the database of the national crime information center or any similar or successor database maintained by the United States; or
“E. is identified as a possible match in the terrorist screening database.
“ii. the search conducted pursuant to subparagraph i of this paragraph indicates, or the department has been informed by federal immigration authorities, that such individual:
“A. has an outstanding warrant of removal issued pursuant to 8 C.F.R. 241.2; or
“B. is or has previously been subject to a final order of removal pursuant to 8 C.F.R. 1241.1.”
None of these scenarios is present in this case. Therefore, the Commissioner is acting in violation of section 9-131 (b) (1) (i).
But, assuming an argument can be made that section 9-131 (b) (2) is applicable, one must look to the reach of this local law. *278 Administrative Code § 9-131 (d) provides: “Nothing in this local law shall be interpreted or applied so as to create any power, duty or obligation in conflict with any federal or state law.”
The detention of any person in this state is subject to the Fourth Amendment, as applied to the states through the Fourteenth Amendment, of the United States Constitution and article I, § 12 of the New York State Constitution. In essence, no person shall be detained by a government agent in the absence of probable cause. In the absence of a commitment order issued by a competent court, a detention of an inmate constitutes a seizure and, in the absence of probable cause, such seizure constitutes a violation of both the United States and New York State Constitutions.
The facts in this case indicate that the DHS has a reason to believe that Mr. Mendoza is an alien subject to removal from the United States. There is no allegation that the Department has actually obtained a removal order and, if in fact it had, there is still no authority for a local correction commissioner to detain someone based upon a civil determination, as immigration removal orders are civil, not criminal, in nature.
In this case, the securing order holding Mr. Mendoza no longer exists. The Commissioner must look to some other authority to detain him in Department of Correction custody. This court holds that the federal detainer in this case does not constitute authority to hold Mr. Mendoza.
The court finds that Mario Mendoza is being detained in violation of the laws of the United States and State of New York and the New York City Commissioner of Correction is hereby ordered to release the relator immediately.